SHA.UCK, J.
That the legislative acts referred to, if valid, confer the authority asserted by the defendants is not disputed. The constitutional validity of those acts is the inevitable question.
Their validity is denied upon the ground that they are in conflict with the limitation upon legislative power imposed by section 26 of article 2, of the constitution, which ordains that “Alllaws of a general nature shall have a uniform operation throughout the state. ’ ’
It is admitted that there has been no casualty which makes it impracticable to submit these projects to the electors of the county. By their ex *17 press terms the operation of these acts is restricted to Mahoning county, and, yet more narrowly, to the construction of the bridges designated. They assume to authorize the erection of these structures at a cost exceeding ten thousand dollars each without the approving vote of the electors, which, except in cases of casualty, is required by the general law in force elsewhere in the state. Revised Statutes, Sec. 2825.
It is doubtless true that the absence of a general law upon the subject would not relieve the legislature of the limitation under consideration nor affect the general character of the subject. There is, nevertheless, propriety in adverting to the fact that within less than two years from the taking effect of the present constitution this' subject was comprehended in legislation of uniform operation throughout the entire state, and published under the title of “Acts of a General Nature” as distinguished from those of alocal nature. Although the legislation operating thus uniformly has been frequently amended, it is yet in force, embracing the section of the revised statutes referred to. For many years there was no legislation of limited operation upon the subject. This legislative history not only shows how the subject was regarded by those who had aided in placing this limitation in the constitution, but it demonstrates the practicability of comprehending the entire subject in laws of uniform operation throughout the state.
The maxim stare decisis is invoked to support .the legislation in question. Although numerous acts of local operation assuming to authorize the construction of highway bridges by county commissioners have been passed at recent dates, we are aware of no decision of this court by which they have been held *18 valid. Their validity might well have been inferred from the view taken of this limitation in its application to highways in State ex rel. Hibbs v. The Commissioners of Franklin Co., 35 Ohio State, 458, but that case has been expressly overruled. The subject was not even remotely involved in Cass v. Dillon, 2 Ohio State, 607. The point determined was stated with precision in the opinion of the majority: “The decision of this case turns upon a single question, namely: Was the act of Assembly of March 24, 1851, authorizing a subsciiption by Muskingum county to the capital stock of the C., W. & Z. R. R. Co., abrogated by the new constitution?” In both opinions it was agreed that the act was valid under the former constitution, and that it would have been void if passed under that of 1851. Nothing that was said in the case upon the subject before us could have the force of a decision. The reference to Cass v. Dillon is nevertheless, timely; for in a dissenting opinion (page 646) Ranney J., who had recently borne a leading part in the convention which framed the present constitution, states concisely the occasion for, and the purpose of, the inhibitions against local legislation. “The people have not depended on the legislature for protection. Sad experience had taught them that laws having' a local application, and imposing local burdens seldom commanded the deliberate judgment of the whole representation of the state. They have, therefore, deemed it necessary to prohibit that body from authorizing this evil.”
In Lehman v. McBride, 15 Ohio State, 573, Scott, J. states accurately the reason and purpose of the limitations now considered: “Under the former constitution, laws having a general subject matter, *19 and, therefore, of a general nature, were frequently limited expressly, in their operation, to one or more counties, to the exclusion of other portions _ of the state. As a consequence, on the same subject there might be one law for Hamilton county, another for Franklin and still a third for Ashtabula. This naturally led to improvident legislation, enacted by the votes of legislators who were indifferent in the premises, because their own immediate constituents were not affected by it. To arrest and for the future, prevent this evil, the provision in question was inserted in the present constitution.” 'If the reason of the organic law is its life, the limitation under consideration is necessarily fatal to this legislation. Is it supposed that these acts represent the deliberate judgment of the entire body of the representation of the state; that each of the senators and representatives, contemplating the necessity for these bridges, acquired the knowledge and exercised the judgment which are essential to legislative discretion; or regarding the 'precise difference between'the provisions of these acts and those of the general law — that they learned that the electors of Mahoning county are incapable of determining questions of this character for themselves, as are the electors of other counties? Appropriate treatment of the suggestion is forbidden, for the subject and the occasion are too grave for levity.
’It is said that these acts are not of a general nature, and that they are therefore, not within the requirement as to uniformity of operation. With respect to this, question the logical'and legal relation of laws to their subject matter is pointedly and accurately suggested in the foregoing quota *20 tion from Lehman v. McBride: “Laws having a general subject matter, and, therefore, of a general nature, etc.” This is elliptic of the definition found in Kelley v. The State 6, Ohio State, 269; “Without undertaking to discriminate nicely or define with precision, it may be said that the character of a law as general or local depends on the character of its subject matter. If that be of a general nature, existing throughout the state in every' county, a subject matter in which all the citizens have a common interest, * * then the laws which relate to and regulateitarelaws of a general nature, and by virtue of the prohibition referred to, must have a uniform operation throughout the state.” This definition may not be so precise as to make it easy in all cases to determine whether a law is of a general nature, but its accuracy does not seem to have been denied. The terms of the limitation imply that there are subjects of a general nature with respect to which there is the imperative requirement of uniform, operation of all laws. To say that the nature Of the subject may be determined by the operation of a law with respect to it, would be to annul the limitation. It seems that the subject of legislation comprehended in these acts is clearly general.
We agree with counsel for the defendants that the electors of Mahoning county have not a constitutional right to vote upon this question. The subject is undoubtedly legislative, and the general assembly may, by general law, authorize all boards of county commissioners in the state to erect bridges of the cost of these without the approval of the electors. But the electors of Mahoning county have the right to insist that a burden of this character shall not be laid upon them without their *21 consent unless in pursuance of a law operating everywhere within the state, and representing the considerate judgment of the entire body of the representation.
Nor is this limitation upon legislative power less effective because it is not, as it is in some of the states, coupled with a specification of subjects with reference to which laws of local operation are forbidden. Every such specification must contract, rather than expand, the scope of the limitation. It is not possible to anticipate the subjects of legislation that may appear in the progress of a state’s developement. Therefore, constitutions do not legislate. They locate and limit the powers of government and define the modes of their exercise.- With .respect to the subject in hand no limitation could be more comprehensive than one which annuls all legislative acts upon general subjects unless they operate uniformly throughout the state. The general and comprehensive terms employed by the people of Ohio in fixing this boundary to legislative power indicate a determination to be relieved of all the evils of local legislation upon general subjects, and a firm reliance upon the vigilance and constancy of the courts in securing to them the protection for which they made ample provision in the organic law.
We are admonished that public credit will be impaired if these acts are adjudged to be invalid, because many local bonds have been issued under the supposed authority of similar legislation. That there has been much legislation of this character is painfully apparent from an examination of the recent volumes of the session acts. To what extent its validity may have been assumed by the purchasers of bonds, or acquiesced in by tax payers *22 and the public counsel, we do not know. Nor is it necessary to inquire. However frequently such offenses against the constitution may have been condoned, they are offenses still. The attorney general in pursuance of his plain duty has challenged the validity of these acts before any credit has been extended to the authority which they assume to confer, and the case does not invite the expression of any opinion concerning equitable considerations which may be supposed to estop tax payers or the public to assert its invalidity.
We bear in mind that courts should not adjudge acts of the general assembly to be void upon mere doubts as to their validity, and that all doubts of substantial character should be resolved in. its favor. We also remember the admonition given to juries with much propriety and frequency, that doubts should not be conjured up to serve as pretexts for the failure to perform responsible duties. Questions of this character afford small opportunity for compromise or concession. The provisions of the constitution and enactments in conflict with them cannot stand together. That conservatism is of the highest type whiqh conserves the paramount law. ’ The presumption in favor of the validity of legislation rests only upon what may be assumed or known of the intelligence and care with which legislators observe the boundaries of their power. Considering the evils to be remedied by this limitation, the natural and obvious meaning of its terms as well as its authoritative exposition, there remains, we think, no reason to doubt that it inhibits local legislation of this character.
Since bridges are but parts of highways, this conclusion is fully sustained by Hixson v. Burson *23 54 Ohio St., 470, where it was held that local legislation on the subject of highways is inhibited by the section of the constitution here considered. Perhaps we might have relied on the authority of that case, but some further ‘observations seemed due to the importance of the subject and the able arguments of counsel.
” Demurrer'to answer sustained and judgment of ouster.